**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **SHARON MADGER** | CASE NO. 1:22-cv-00158 |
| 9664 Wildwood Dr. | |
| Chardon, Ohio 44024, | JUDGE |
| | |
| *Plaintiff,* | MAGISTRATE JUDGE |
| | |
| vs. | |
| | |
| **SIEMENS MEDICAL SOLUTIONS** | **COMPLAINT** |
| **USA, INC.** | |
| c/o CT Corporation System | Jury Demand Endorsed |
| 4400 Easton Commons Way | |
| Suite 125 | |
| Columbus, Ohio 43219, | |
| | |
| *Defendant.* | |

Plaintiff Sharon Madger ("Madger"), for her Complaint, states as follows:

**PARTIES, VENUE AND JURISDICTION**

1.    Madger is a United States citizen and, at all times relevant, has been residing, and currently

resides in, the City of Chardon, in Geauga County, Ohio.

2.    At all times relevant to the claims alleged herein, Madger was an "employee" and/or

"person" within the meaning of the Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e, *et seq.* ("Title VII"), and within the meaning of Chapter 4112 of the

Ohio Revised Code ("Chapter 4112").

3.    Defendant Siemens Medical Solutions USA, Inc. ("Siemens" or "Defendant") is a for-

profit corporation, formed in Delaware, and registered as a foreign corporation with the

Ohio Secretary of State.

4.      Siemens is an "employer" and/or "person" within the meaning of Title VII and within the meaning of Chapter 4112.

5.      Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over Plaintiff's claims arising under Title VII.

6.      The Court may exercise supplemental jurisdiction over Plaintiff's state-law statutory claims under 28 U.S.C. § 1367.

7.      Venue is proper in the Eastern Division of the Northern District of Ohio as the alleged acts, omissions, or failures to act, took place, at least in part, in Geauga County, Ohio.

8.      Plaintiff has complied with the conditions precedent for bringing an action under Title VII and Chapter 4112 by filing a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") with respect to her discrimination and retaliation claims, where said charge was dual-filed with the Ohio Civil Rights Commission ("OCRC") pursuant to the work-sharing agreement between the EEOC and OCRC.

9.      Plaintiff received a "Right to Sue" notice from the EEOC on January 20, 2022, and filed this action within 90 days of receipt.

## FACTUAL ALLEGATIONS

10.     Siemens, which operates under the name "Siemens Healthineers," designs, builds, and services a broad range of medical devices – e.g., CT scanners, MRI machines, and X-ray equipment – used by hospitals to diagnose and treat patients.

11.     Madger was employed by Siemens for approximately 32 years.

12.     Most recently, Madger held the position of Installation Project Manager for Siemens Healthineers.

13.     As an Installation Project Manager, Madger was responsible for overseeing logistics, planning, delivery, and installation of imaging equipment to customer locations.

14.  In recent years, Madger spent the majority of her time working from her home in Chardon, Ohio, while visiting customer sites approximately two to four times per month on average.

15.  On August 31, 2021, Siemens Healthineers announced and enacted a COVID-19 vaccine policy for its U.S. employees ("Vaccine Policy").

16.  Siemens, through its Vaccine Policy, required "full vaccination for COVID-19 for [its] U.S. employees, contractors, and business partners, where conditions allow, who: 1) are customer-facing (e.g., those required to visit a customer/business partner site or interact in-person with customers at any conference or meeting) OR 2) come on-site, whether regularly or occasionally, at any Siemens Healthineers location."

17.  Siemens's Vaccine Policy stated that employees could request an exemption/accommodation for medical or religious reasons.

18.  Concurrent with the enactment of its Vaccine Policy, Siemens issued a policy entitled "Reasonable Accommodation Guidelines – COVID-19 Vaccine."

19.  The "Accommodation Guidelines" stated that Siemens would engage in an interactive process with the employee "to determine whether it can grant an exemption/reasonable accommodation" and "to identify possible accommodations."

20.  Madger holds certain religious beliefs that conflict with the Vaccine Policy.

21.  For example, one of Madger's religious beliefs is that abortion is immoral.

22.  Because each of the COVID-19 vaccines approved for use in the United States had been generated by, or tested on, cell lines derived from an aborted fetus, Madger objected to personally taking any of the COVID-19 vaccines.

23.  On or about September 6, 2021, Madger, in compliance with the Vaccine Policy and associated policies, timely submitted to Siemens a request for a religious accommodation.

24. For an accommodation, Madger asked that Siemens exempt her from the vaccine requirement because she primarily worked from home. Madger proposed that for the occasions on which she would need to visit a customer, she would continue to follow the COVID-19 safety protocols required by the customer's facilities.

25. On September 15, 2021, Siemens responded via email to Madger's request and asked Madger to provide some additional information needed by Siemens to assess her request.

26. Madger promptly responded to Siemens's request for additional information.

27. On October 6, 2021, Siemens Healthineers announced updates to its Vaccine Policy based upon President Biden's September 2021 Executive Order 14042 applicable to federal contractors.

28. The updated Vaccine Policy continued to allow employees to request accommodations/ exemptions for medical or religious reasons.

29. On October 15, 2021, Siemens notified Madger that it had denied her accommodation request.

30. In the denial, Siemens wrote: "Without addressing and irrespective of the sincerity of your religious belief, we have carefully reviewed your request and based on your role as a customer-facing employee in a healthcare organization and the impact on the business, we are unable to accommodate your request."

31. Siemens did not engage in any interactive process with Madger prior to denying her accommodation request.

32. On October 20, 2021, Madger sent an email to certain Siemens's human resources and management officials, requesting to engage in the interactive process: "I would like to engage in an interactive process. I believe there is a way  to accommodate me that would

work and cause no 'undue hardship' to Siemens Healthineers. I am available at the number below or at this email."

33. Madger desired to discuss with Siemens some potential ways to accommodate her religious beliefs, while still keeping others safe from COVID-19, including through various testing and masking protocols.

34. On October 21, 2021, Siemens sent out a general email, extending the time period for employees to come into compliance with the Vaccine Policy by an additional week.

35. Siemens's October 21st email stated that one purpose of this additional week was "to continue the interactive process."

36. Despite the sentiments expressed in this email, and despite Madger's specific request on October 20th, no one from Siemens ever engaged with Madger in an interactive discussion to explore potential ways that she could continue in her role as an Installation Project Manager while remaining unvaccinated.

37. Had Siemens engaged in such an interactive discussion with Madger, a reasonable accommodation would have been determined.

38. Siemens, in its communication to Madger regarding its rejection of her accommodation request, noted that there may be "remote roles where an accommodation could be possible," and invited Madger to search and apply for any such potential positions.

39. When Madger spoke with her supervisor, Sandy Perrone, about the possibility of looking for a different position, Perrone discouraged Madger from applying because even in these other positions, Madger would be required to be vaccinated.

40. When Madger questioned Perrone on why Siemens did not honor her request to engage in an interactive process to discuss potential ways to accommodate her, Perrone responded

that Siemens's "interactive process" was simply an opportunity to provide employees some additional time to reconsider their decision not to be vaccinated.

41. Consistent with her incorrect definition of the "interactive process," Perrone pressed Madger multiple times about whether she would ever change her mind about getting vaccinated.

42. On November 12, 2021, Siemens terminated Madger's employment for non-compliance with its Vaccine Policy.

## COUNT 1
### (Religious Discrimination – Failure to Accommodate and Wrongful Discharge: Violation of Title VII and Ohio Rev. Code § 4112.02(A))

43. Madger re-alleges all prior paragraphs and incorporates them here by reference.

44. Madger holds sincere religious belief that conflicted with Siemens's Vaccine Policy.

45. Madger informed Siemens about her religious beliefs and how her beliefs conflicted with the Vaccine Policy.

46. Madger asked Siemens for an accommodation based on this conflict.

47. The accommodation that Madger proposed was reasonable.

48. Siemens denied Madger's request for an accommodation.

49. Siemens failed and/or refused to engage in an interactive process with Madger.

50. Had Siemens engaged in an interactive process with Madger, a reasonable accommodation would have been determined.

51. Siemens then discharged Madger from her employment for failing to comply with its Vaccine Policy.

52. Siemens's conduct, as described in this Count, constitutes unlawful religious discrimination in violation of Title VII and Ohio Rev. Code § 4112.02(A).

53. As a direct and proximate result of Siemens's unlawful discrimination, as set forth above, Madger has suffered, and will continue to suffer, emotional distress, lost wages, including back pay, front pay, pension/retirement benefit accruals, and other benefits to which she would be entitled. Some or all of Madger's damages will continue indefinitely into the future.

54. Siemens acted with malice and/or conscious disregard of Madger's rights, and thus is liable to her for compensatory and punitive damages.

## COUNT 2
### (Retaliation: Violation of Title VII and Ohio Rev. Code § 4112.02(I))

55. Madger re-alleges all prior paragraphs and incorporates them here by reference.

56. By requesting that Siemens provide her with a reasonable accommodation based on her religious beliefs, Madger engaged in protected activity under Title VII and Chapter 4112.

57. Siemens was aware of Madger's request for an accommodation.

58. Thereafter, Siemens denied Madger's request and terminated her employment.

59. A causal nexus existed between Madger's engaging in protected activity and Siemens's decision to terminate her employment.

60. Siemens's conduct, as described in this Count, constitutes unlawful retaliation in violation of Title VII and Ohio Rev. Code § 4112.02(I).

61. As a direct and proximate result of Siemens's unlawful retaliation, as set forth above, Madger has suffered, and will continue to suffer, emotional distress, lost wages, including back pay, front pay, pension/retirement benefit accruals, and other benefits to which she would be entitled. Some or all of Madger's damages will continue indefinitely into the future.

62.     Siemens acted with malice and/or conscious disregard of Madger's rights, and thus is liable

to her for compensatory and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, as to all of her claims for relief, Plaintiff prays for judgment against

Defendant, as follows:

A.  Issue a preliminary and permanent injunction prohibiting Defendant from abridging Plaintiff's rights to be free from employment discrimination;

B.  Issue a declaratory judgment finding that the acts and omissions of Defendants as set forth herein violate Plaintiff's rights under Title VII of the Civil Rights Act of 1964 and Ohio Revised Code Chapter 4112, which specifically prohibit discrimination on the basis of religious beliefs and retaliation for engaging in protected activities;

C.  Issue a preliminary and permanent injunction requiring Defendant to grant Plaintiff reinstatement with back pay;

D.  Order Defendant to put Plaintiff in her "rightful place," including reinstatement to her prior position and restoration of any seniority lost due to Defendant's violations;

E.  Make Plaintiff whole with appropriate back pay, front pay, benefits, and compensatory damages;

F.  Punish and deter Defendant's unlawful discriminatory and retaliatory misconduct with appropriate punitive damages under Title VII and Chapter 4112 of the Ohio Revised Code;

G.  Grant Plaintiff pre-judgment and post-judgment interest on the amounts awarded as allowed by law;

H.  Award Plaintiff costs and reasonable attorney fees; and

I.  Grant such other relief as is necessary to make Plaintiff whole.


Respectfully submitted,

*/s/ Stuart G. Torch*
STUART G. TORCH (0079667)
DAVID N. TRUMAN (0082347)
**EMPLOYMENT LAW PARTNERS, LLC**
4700 Rockside Road, Suite 530
Independence, Ohio 44131
(216) 382-2500 (Telephone)

8

(216) 381-0250 (Facsimile)
stuart@employmentlawpartners.com
david@employmentlawpartners.com

*Attorneys for Plaintiff Sharon Madger*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Stuart G. Torch*
STUART G. TORCH (0079667)

9